# PHILLY INTERNATIONAL BAR, INC.

## v.

# PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 11, 2008.
Decided Dec. 8, 2008.
Reargument Denied Feb. 10, 2009.
Publication Ordered March 3, 2009.

James M. Petrascu, Harrisburg, for appellant.

Edward A. Taraskus, Philadelphia, for appellee.

BEFORE: COHN JUBELIRER, Judge, BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BUTLER.

The Pennsylvania Liquor Control Board (Board) appeals from the September 4, 2007 order of the Court of Common Pleas of Philadelphia County (trial court) reversing the Board's October 18, 2006 order, and directing the Board to immediately renew Restaurant Liquor License No. R–14472 (license) held by Philly International Bar, Inc. (Licensee).

Licensee untimely filed an application for renewal of its restaurant liquor license for the period November 1, 2004 through October 31, 2006. By letter dated October 20, 2004, the Board's Bureau of Licensing (Licensing) conditionally approved the renewal pending resolution of Citation No. 03–1626, which was being adjudicated before an administrative law judge (ALJ).

On May 4, 2006, Licensing notified Licensee that it objected to the renewal of the license due to its citation history, which included Citation No. 03–1626 [1] and newly-adjudicated Citation No. 05–0218. [2]

A hearing was held before a hearing examiner on May 23, 2006 to determine whether Licensing's objection was sufficient to warrant non-renewal of the license. The hearing examiner recommended that the license be renewed. On October 18, 2006, however, the Board refused to renew the license. Licensee appealed to the trial court.

A de novo hearing was held before the trial court on June 20, 2007. In addition to presenting the record from the administrative hearing, the Board presented evidence of significant drug activity occurring at the licensed premises. [3] By order dated September 4, 2007, the trial court reversed the Board and directed it to immediately renew Licensee's liquor license. The Board appealed that decision to this Court. [4]

1. Citation No. 03–1626 consisted of five counts. The first count charged Licensee with allowing amplified music to be heard outside the licensed premises on five dates. The second count charged Licensee with committing or allowing to be committed acts of public indecency on three dates, which included female patrons being encouraged to kiss Licensee's bartenders, to kiss each other, to show their underwear, to lick and bite a peeled banana from a male bartender's crotch area, and to expose their breasts. The third count charged Licensee with providing free alcoholic beverages to female patrons involved in the above activity, while charging male patrons full price on two dates. The fourth count charged Licensee with committing simple and aggravated assault and/or recklessly endangering patrons on the premises. The fifth count charged Licensee with operating the licensed premises in a noisy and/or disorderly manner on nine dates, as a result of the assault and loud music incidents. The ALJ sustained the charges against Licensee and imposed a fine of $3,500.00.

2. Citation No. 05–0218 consisted of three counts. The first count charged Licensee with failing to maintain complete and truthful records covering the operations of the licensed business from June of 2002 to June of 2004. The second count charged Licensee with allowing amplified music to be heard outside the licensed premises on two dates. The third count charged Licensee with selling and/or serving an unlimited or indefinite amount of alcoholic beverages for the fixed price of $20.00. The ALJ sustained the charges against Licensee and imposed a fine of $750.00.

3. The Board may rely on incidents occurring during or after a renewal period when determining whether to renew a liquor license. In re License Renewal of The Quippan Club, 806 A.2d 491 (Pa.Cmwlth.2002).

4. "This Court's scope of review in a liquor license renewal case is limited to determining whether the trial court's findings of fact are supported by substantial evidence and wheth-

■ The issue before us is whether the trial court abused its discretion and/or failed to base its decision on substantial evidence when it ordered the renewal of Licensee's liquor license. The Board argues that the trial court's failure to consider the uncontroverted stipulated evidence demonstrating a pattern of drug trafficking at the premises was an abuse of its discretion, and its conclusion that the license should be renewed was not based upon substantial evidence. We agree that the trial court's failure constituted an abuse of discretion.

■ In Section 104(a) of the Liquor Code,[5] the General Assembly has authorized the Board to exercise broad police powers in fulfilling its duty to protect the public welfare, health, peace and morals of the citizens of the Commonwealth. A licensee is strictly liable for violations of the Liquor Code and the Board's regulations. *Pennsylvania Liquor Control Bd. v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988). A licensee may also, however, be held accountable for non-Liquor Code violations (like those under the Crimes Code), if it can be established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity. *Id.*

■ It is clear that a trial court reviewing a decision of the Board not to renew a liquor license hears the matter *de novo*, and may sustain, alter, modify or amend the Board's order even when it is based upon the same evidence presented before the Board. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Bd.*, 909 A.2d 24 (Pa.Cmwlth.2006). However, this Court has found an abuse of discretion where a trial court ignored "substantial, *uncontradicted* evidence in the record, and the strong inferences drawn from it . . . ." *Pennsylvania Dept. of Transp. v. Mazzarini*, 919 A.2d 295, 302 (Pa.Cmwlth.2007).

The trial court's opinion, filed January 22, 2008, states "Licensee received merely two citations with only one common incident between the two. Licensee then undertook affirmative steps to remedy all cited unlawful activity and its remedial measures have proved effective. Consequently, the license should have been renewed." Trial Ct. Op. at 3; Reproduced Record (R.R.) at 8a. Had the trial court heard nothing more than evidence of the two citations, this Court would be hard-pressed to disturb its determination in light of the wide discretion granted trial courts reviewing liquor license matters. However, the trial court was presented with additional, uncontradicted evidence that the trial court did not address when making its determination to reverse the Board's decision.

By way of a stipulation between the Board and Licensee, it was established at the hearing before the trial court, that a drug investigation was conducted by the Pennsylvania Attorney General and the Pennsylvania State Police, Bureau of Liquor Control Enforcement (BLCE), at Licensee's premises between June of 2005 and February of 2006. Notes of Testimony, June 20, 2007 (N.T.), at 6–9; R.R. at 68a–71a. It is undisputed that on June 2, June 17, June 24, July 8, July 15, September 2, September 15, September 22, September 29, and October 6, 2005, and on January 10, January 20, January 31, Feb-

---

er the trial court committed an error of law or abused its discretion." *Goodfellas, Inc. v. Pennsylvania Liquor Control Bd.*, 921 A.2d 559, 564 (Pa.Cmwlth.2007).

**5.** Act of April 12, 1951, P.L. 90, *as amended;* 47 P.S. § 1–104(a).

ruary 2 and February 9, 2006, a confidential informant made purchases of cocaine, in amounts ranging from .48 to 4.4 grams, at the bar inside Licensee's premises from Victor Heard, an individual who Licensee's principals deemed a regular customer. N.T. at 8, 15, 20–22, 31–32; Ex. 5; R.R. at 70a, 77a, 82a–84a, 93a–94a, 111a–127a. When Mr. Heard was arrested inside Licensee's premises on February 9, 2006, he was in possession of baggies containing 1.9, 3.0 and 8.7 grams of cocaine. Ex. 5; R.R. at 127a. Mr. Heard has been barred from Licensee's premises since his arrest. N.T. at 16, 37; R.R. at 78a, 99a.

Licensee's drug policy was posted on the premises throughout 2005, and was made known to Licensee's employees. N.T. at 19, 23–24, 35, 38; Exs. L–1, L–2; R.R. at 81a, 85a–86a, 97a, 100a, 128a–134a. Licensee's bartenders, doormen and other employees were present, however, during the repeated drug purchases on the premises in 2005 and 2006. N.T. at 9; R.R. at 71a. While Licensee's president, Andrew Cosenza, claimed that his first notice of drug activity occurring at the licensed premises was at the time of Mr. Heard's February 9, 2006 arrest, he acknowledged that there were some previous "light incidents that were diffused immediately where we suspected activity was occurring where people were acting outside the ordinary and they were just escorted out of the premises." N.T. at 13–15; R.R. at 75a–77a.

To be sure that the interests of the citizens of the Commonwealth are protected, the Board must closely examine the operation of an establishment that holds a license to serve alcoholic beverages when assessing whether to renew its liquor license. In this case, the Board found that Licensee's business operation was such that drug activity was permitted to take place on the premises. The drug activity was so pervasive that Licensee's principals or employees should have known of the activity and taken steps to prevent it. In fact, Licensee's president admitted he was aware of "light incidents" at the premises prior to the undercover drug purchases. Under the circumstances, the trial court should have considered this evidence in making its ruling.

We hold that the trial court abused its discretion when it ignored the substantial uncontradicted evidence relating to drug activity and ordered the renewal of Licensee's liquor license. The trial court's order is, therefore, reversed.

### ORDER

AND NOW, this 8th day of December, 2008, the September 4, 2007 order of the Court of Common Pleas of Philadelphia County is hereby REVERSED.