# CMJ Sheffield, Inc. v. Pa. Liquor Control Board

*Edward B. McHugh*, for appellant.

*Peter J. Yoon*, for appellee.

PADILLA, *J.*, Oct. 17, 2014—Appellant, CMJ Sheffield, Inc., appeals this Court's denial of its statutory appeal from the final adjudication of the Pennsylvania Liquor Control Board. This adjudication denied its application for renewal of its liquor license for the term effective November 1, 2012.

## FACTUAL AND PROCEDURAL HISTORY

On August 17, 2011, the Pennsylvania Liquor Control Board ("appellee")'s Bureau of Licensing approved a Conditional Licensing Agreement ("CLA") regarding the non-renewal of Restaurant Liquor License No. R-8510 for the license period effective November 1, 2010. *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 5. Said CLA placed additional conditions on the license and premises, namely that appellant should remain compliant with responsible alcohol management provisions ("RAMP") of the Liquor Code for training and displaying appropriate signage; that appellant agreed with a citation for providing alcohol to minors; and that license would use a transaction scan device to scan the identifications of all patrons thirty (30) years of age or younger, *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 7.

On March 16, 2012, appellant's RAMP certification expired. *See* appellee's brief, p. 3.

On July 11, 2012, appellant renewed its RAMP certification. *See* appellee's brief, p. 3.

On September 29, 2011, following the execution of the CLA, minors were sold, furnished, or given alcohol, which resulted in citation No. 12-0173. *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 19.

The renewal application was due on or before September 2, 2012 for the licensing period beginning November 1, 2012. *See* Appellee's Findings of Fact and Conclusions of Law, ¶1.

On October 29, 2012, appellant filed an untimely application for renewal. *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 1.

On October 31, 2012, appellee notified appellant by letter that a preliminary review of its citation history[1] required additional review under 47 P.S. § 4-470 to determine whether the allegations of abuse of licensing privilege merited objection to the renewal application. *See* Appellee's Findings of Fact and Conclusions of Law, ¶8. Though appellee conditionally approved the application, it noted the license could be revoked if certain citations were sustained by the Office of the Administrative Law Judge ("ALJ"). *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 8-9.

On January 13, 2013, appellee notified appellant by letter that it objected to the renewal of appellee's license for the period effective November 1, 2012 due to the fact

---

1. Appellee had citations in 2008, 2010, 2011, and 2012. *See* appellee's findings of fact and conclusions of law, ¶ 8. Citations issued were for various violations including failing to require patrons to vacate after the required time; service of alcoholic beverages after 2:30 a.m.; selling alcohol to minors; and selling an unlimited amount of alcoholic beverages for a fixed price. *See* appellee's findings of fact and conclusions of law, ¶ 15-20.

that the ALJ had sustained Citation Numbers 12-0400 and 12-0173. *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 9. A hearing was therefore scheduled to determine whether the objections should result in a non-renewal of the license. *See* Appellee's Findings of Fact and Conclusions of Law, ¶9. The objections were: that Appellant had abused its liquor licensing privilege due to six (6) separate citations; that it had breached the CLA; and that the application was filed late. *See* Appellee's Findings of Fact and Conclusions of Law, ¶ 9.

On August 15, 2013, a hearing was held before appellee.[2] At the hearing, David Kalai, co-manager of the premises since 2008 and sole manager since 2011[3], testified regarding past citations. Notes of Testimony, hereinafter N. T., 8/15/13 at 8-9. He stated that he was unaware that minors had entered the bar and had not been carded; he opined the bouncer must have believed that the girls had been carded. N. T. 8/15/13 at 20-21, 24, 26-27, 32-33, 46-47. He averred that on the night of the incident, bar servers were RAMP-trained and that one scanner was operative. N. T. 8/15/13 at 25-28, 47. Following that incident, which resulted in citation No. 11-2053, Kalai and his co-manager hired new security personnel, bartenders, and waitresses. N. T. 8/15/13 at 25-26, 59-60. Kalai testified he was not present on the night in which a BCLE raid found two (2) minors with fake identification on the premises, resulting in citation No. 12-0173, however bartenders were scanning identification. N. T. 8/15/13 at 32-33. A new scanner was purchased and new bouncers hired following that incident. N. T. 8/15/13 at 36-37, 56-59.

---

2. Although both appellant and appellee cite to the notes of testimony from this hearing, such notes were not provided in the certified record.

3. Despite Kalai's assertion that he was sole manager, Steven Godfrey is still listed as the board approved manager for the premises. N. T. 8/15/13 at 13-44.

Donald and Leigh Jones are, respectively, the supervisor and owner of the licensed premises. N. T. 8/15/13 at 62-63. Jones testified he is familiar with the citations, objection letters, and conditional licensing agreement. N. T. 8/15/13 at 65, 79-80. He offered various excuses for citations, including one for citation was his brother's wedding and that there are "obviously loopholes in the whole ID checking system," and that it is "common practice in [their] business" to have open bar specials and/or group packages to celebrate New Years' Eve. N. T. 8/15/13 at 66, 70, 96-97. He stated he did not know the New Years' events were illegal; although he had received a citation in 2008 for serving drinks at a fixed price, he felt that was "different" because it was for an NCAA basketball special. N. T. 8/15/13 at 97-99. Additionally, he felt that the New Years' Eve events were "third party contracts" although the promotion company, while a separate entity, was still considered an agent of his. N. T. 8/15/13 at 137-138.

Although Jones understood it was his responsibility to ensure RAMP certification and compliance, he thought appellee's counsel would handle the matter and he "lost track of time. N. T. 8/15/13 at 80-81. He stated that owner and manager training is required and because classes required travel, he "just kind of dropped the ball." N. T. 8/15/13 at 81. He stated that RAMP training was all appellant needed to maintain its certification. N. T. 8/15/13 at 83. Following the citations Jones did fire Godfrey and bouncers, and added another scanner and upgraded camera system. N. T. 8/15/13 at 89-91, 154.

On December 18, 2013, appellee issued its final decision, denying appellant's application for a license renewal.

On December 20, 2013, this case was commenced by timely statutory appeal.

On March 17, 2014 and April 4, 2014, this court received the certified record from appellee, including both the hearing examiner's proposed conclusions of law and finding of fact, which recommended renewal, as well as the ALJ's opinion. Said opinion noted the record of six adjudicated citations, the breach of the CLA and specifically for violating the provision requiring RAMP compliance, and appellant's "inability or unwillingness to acknowledge and accept responsibility for its violations." *See* appellee's opinion at 45. The conclusions of law held that: Appellant had adequate notice of objections; that appellant had accrued six (6) adjudicated citations; that appellant had violated the CLA; that appellant had provided no justifiable reason for its untimeliness in filing its renewal application; and that appellant offered ineffective justifications for violations and took remedial measures without adequate commitment to effectuate them. *See* appellee's conclusions of law at 1-7.

On May 5, 2014, appellant filed its brief, arguing that it did take substantial affirmative steps to guard against future unlawful conduct by: firing staff members; writing new policies; purchasing an additional scanner and upgrading its surveillance system; terminating the existing co-manager and hiring a new manager; and posting signage regarding service to minors. Additionally, appellant argued that the board had usurped enforcement functions delegated in the code because it 'objected to the same incidents that were the subject matter of adjudicated citations...usurping enforcement functions specifically delegated to another Commonwealth agency, i.e. the Bureau of Liquor Control Enforcement. Finally, appellant argued that the board was collaterally stopped from denying the renewal because previous citation matters had already been adjudicated.

On June 2, 2014, appellee filed its brief, restating the

procedural history and arguing that appellant's arguments were without merit because case law specifically allowed it to consider previous adjudications; that appellant's remedial measures were inadequate; and that the Board did not prosecute previous adjudications.

On July 10, 2014, this court heard oral argument on the merits of the case. That same day, this court denied appellant's appeal. At the hearing, appellee argued that it made its decision not to renew the license based on six (6) adjudicated citations;[4] the breach of the CLA; and because the application was untimely filed. Notes of Testimony, hereinafter N. T., 7/10/14 at 4. Appellee noted that one of the citations for selling alcohol to minors was six weeks after the signing of the CLA; N. T. 7/10/14 at 4-5. Other breaches of the CLA included failure to scan patrons thirty (30) years or younger and failure to achieve RAMP certification, which expired March 16, 2012, and was not renewed until July 2012. N. T. 7/10/14 at 5. Additionally, appellee argued that appellant had failed to comply with basic requirements of the liquor code, including a timely filed application and change of manager forms. N. T. 7/10/14 at 6.

Appellant argued that although the application was due September 2, 2012, it was filed prior to the expiration of its license on October 31, 2012. N. T. 7/10/14 at 11. Appellant argued that there were "tremendous amounts of mitigating facts on the record" that appellee "completely ignored," but did not mention what those facts were. N. T. 7/10/14 at 13. Appellant argued that, regard to the citation for serving unlimited alcohol, it "thought it was a legal

---

4. The citations were: 08-0507: failure to require patrons to vacate the premises; 08-0899: for providing an unlimited amount of liquor for a fixed price, and selling alcohol to minors; 10-0340: selling alcohol to minors; 11-0253: selling alcohol to minors; 12-0173: selling alcohol to minors; 12-0400: providing an unlimited amount of alcohol for a fixed price. N. T. 7/10/14 at 4-5.

thing to do." N. T. 7/10/14 at 14. It argued that because the hearing examiner recommended renewing the license, appellee was in error for finding that said license should not be renewed. N. T. 7/10/14 at 16.

On August 6, 2014, appellant filed a timely notice of appeal to the Commonwealth Court. That same day, this court issued its order pursuant to Pa. R.A.P. 1925(b), directing appellant to file its Concise Statement of Matters Complained of on Appeal within twenty-one (21) days.

On August 26, 2014, appellant filed its "statement of uncontested facts," averring that this court erred in finding that appellant had failed to take substantial affirmative measures to prevent further violations from occurring; that this court erred in 'failing to follow established caselaw factually analogous to the present case;' that this court erred in considering appellant's full citation history; that this court erred in considering citation 12-0173 because the ALJ had 'acknowledged [appellant's] efforts and good faith intentions;' that this court erred in considering citation 12-0173 as a violation of the CLA; that this court erred in considering citation 12-0400 because appellant 'held a good faith belief that the event...was lawful;' that this court erred in failing to rule that appellee had 'usurped enforcement functions specifically delegated in the Liquor Code to the Pennsylvania State Police;' that this court erred in failing to rule that appellee was collaterally stopped from denying appellant's renewal application; and that this court erred in denying appellant's application for renewal where Appellant had demonstrated 'substantial affirmative steps and good faith efforts to comply' with the Liquor Code.

## DISCUSSION

On appeal, appellant raises numerous arguments in opposition to this court's denial of his statutory appeal.

However, in reviewing an appeal from an administrative decision, this court is required to affirm the decision of the agency below unless it determines that "constitutional rights were violated, that an error of law was committed, that the procedure was contrary to the statute, or that necessary findings of fact were unsupported by substantial evidence." *Colville v. Allegheny County Retirement Board*, 926 A.2d 426 (Pa. 2007). As a note, this is not a "relitigation" of the citations, but an appeal from the decision not to renew appellant's liquor license. An application for renewal may be refused "due to the manner in which this or another licensed premises was operated..." 47 P.S. § 4-470(a.1)(4).

With regard to appeals from a Liquor Board decision, this court hears the matter de novo and issues its own findings and conclusions based on the established record; it may sustain, alter, modify, or amend the board's action even if it does not find materially different facts. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Bd.*, 909 A.2d 24, 26-27 (Pa. Commw. Ct. 2006). Specifically, the court may make its own findings concerning the significance of the citation history. *I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pennsylvania Liquor Control Bd.*, 969 A.2d 642, 648 (Pa. Commw. Ct. 2009). However, the trial court may do so only where its findings are supported by substantial evidence in the record as a whole, *Id.*

Regarding the issue of timeliness, all applications for renewal of licenses must be filed *at least sixty days* before the expiration date. 47 P.S. § 4-470(a). However, the board may accept late applications *nunc pro tunc* upon *reasonable cause shown. Id.* Renewal of a liquor license is not automatic and the board may refuse to renew a license for several reasons, including because the licen*see* has one or more adjudicated citations. *Goodfellas, Inc. v. Pennsylvania Liquor Control Bd.*, 921 A.3d 559, 564-565 (Pa. Commw. Ct. 2007); *see also* 47 P. S. § 4-470(a.1)(2).

The entire record may be considered and even a single violation is sufficient grounds to decline license renewal; additionally, all past violations may be considered no matter when they occurred. *Goodfellas*, 921 A.2d at 564; *Pennsylvania Liquor Control Bd. v. Bartosh*, 730 A.2d 1187 (Pa. Commw. Ct. 1999). However, the court also has the discretion to renew a license with adjudicated violations where the licensee takes substantial steps to ensure it would operate the establishment in accordance with the liquor laws. *Goodfellas*, 921 A.2d at 566.

In this case, despite appellant's arguments to the contrary, based upon the record there was no reason why this court should have overturned appellee's decision. The case law and code are clear that all past code violations may be considered no matter when they occur. *Goodfellas*, 921 A.2d at 564. Additionally, the untimely filed application for renewal was not accompanied by good cause; the only explanation was that appellant "lost track of time." Finally, the record reflects appellant's continuing pattern of violations and cavalier attitude towards the licensing requirements. Although additional scanners were purchased and staff fired subsequent to each incident, appellant offered excuses such as "loopholes" in the ID system and that certain practices were "common in the industry" to explain the lapses, or that its manager had lost track of time or "dropped the ball."

Thus, despite the fact that some efforts were made towards compliance, appellant has not shown how the record reflects a violation of its constitutional rights, an error of law committed, procedure was contrary to statute, or that the findings of fact were unsupported by substantial evidence. The application was untimely filed, appellee properly considered appellant's past citation history and conduct when denying the application for renewal, and appellant is not entitled to the relief requested.

## CONCLUSION

For all of the reasons stated above, this court's decision should be affirmed and appellant's appeal dismissed.

